### KALION CHEMICAL CO. *v.* THE IROQUOIS.[1]

*(District Court, S. D. New York. March 1, 1889.)*

CARRIERS—DELIVERY OF GOODS—DELAY—DAMAGE.

 Owing to a quarrel between the master of a canal-boat and stevedores employed on a ship, caused by the improper discharge of iron ore into the canal-boat from the ship, two days were lost in the discharge of the ore. By the loss of this time all the ore could not be forwarded on canal-boats before the canal closed, and this action was brought against the owner of the vessel by the owner of the ore to recover the extra freight paid. *Held,* that the ship was liable for the misconduct of the stevedore's men, as its agents, in the improper discharge; and the libelant was also at fault through the delay of the boatman, its agent, in securing a proper adjustment of the difficulty; that the libelant, therefore, should recover half its damage, each side looking for further indemnity to the respective agents employed.

In Admiralty.

Action against the ship Iroquois for improper discharge of libelant's iron ore, whereby libelant was compelled to pay extra forwarding charges.

*Wm. McMichael,* for libelant.

*Henry D. Hotchkiss,* for claimant.

BROWN, J. I do not feel warranted in finding any lack of diligence on the part of the ship in the discharge of her cargo up to the 13th of December, when notice was given that a boat should be sent to receive the libelant's ore from along-side. Mr. Laing, on the part of the ship, understood that the ore was designed to be transported to Philadelphia by way of the Delaware & Raritan Canal, which, according to official notice, was to close at midnight on the 19th December. Proper measures were taken by him for the delivery of the ore in time; and I have no doubt it would have been delivered but for a quarrel that arose between the stevedore's men on the ship and the men on the canal-boat, in respect to the dumping of the ore by letting it fall a considerable distance, so as to endanger the boat. On the arrival of the captain of the boat, about 8 o'clock on the morning of the 14th, when some 5 or 6 tons had been taken on board, he found the boat leaking and injured, through the fall of the ore from the end of the chute, a distance of from 15 to 20 feet. The ore was chrome ore, more or less in lumps, some of which weighed 50 pounds each. Such a mode of loading the canal-boat

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

was manifestly dangerous and unjustifiable, and the stevedore's men were grossly in the wrong in undertaking to load the boat in that way. I have no doubt of the general truth of the captain's statement that when he protested against this he was met with jeers and insults. What happened afterwards is beset with contradiction. It is quite possible that as the boat had already leaked above the lining, through the injuries done by the falling ore, the owner of the boat, who came there at about 12 o'clock, hesitated to continue the loading. He denies this, however, and testifies that he offered to go on with the loading if the steamer would lower the ore in tubs, as customary. The head stevedore came there at about the same time. He testifies that he did offer to lower the ore in the usual way, but that the owner refused, because he had not previously understood that this was the kind of ore he was expected to take, and because he did not consider the boat fit for the job. Two days were thus lost, during which the ship discharged nothing. On the morning of the third day the boat was again brought along-side, the ore was put on board in a proper manner, and her loading completed that day. I am satisfied that it was on account of this two days' loss of time in loading this first boat that the rest of the ore was not loaded in time to go through the canal, in consequence of which the libelant was obliged to pay $218 additional freight. Who is responsible for that two days' loss of time?

The principals on both sides, it is quite clear, acted in entire good faith; and I do not find any personal want of diligence on their part. The cause of the trouble was this difference between the stevedore's men and the boatmen,—a difference which ought to have been settled in an hour. For this difference both the parties immediately involved ought to be held equally responsible; the stevedore, for the misconduct of his men in dumping ore of that kind such a distance, instead of lowering it in buckets, and the owner of the boat for his delay in determining what he would do, and for not at once seeking his principal and securing an adjustment, which it is evident would have been speedily effected. As the boatman was legally the agent of the libelant, and the stevedore the agent of the ship, in making the discharge, the libelant can recover but half his damages from the ship, with costs; and each side must look for further indemnity to their respective agents employed.